T.C. Memo. 2006-267

UNITED STATES TAX COURT

NATHANIEL H. AND CAROL A. GARFIELD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4017-05.                    Filed December 18, 2006.

<u>Ronald J. Cohen</u> and <u>David S. Schwan</u>, for petitioners.

<u>Frank J. Jackson</u> and <u>Karen A. Rennie</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  The issues for decision are whether income received by petitioners should be treated as ordinary income or long-term capital gain and whether petitioners are liable for the section 6662[1] accuracy-related penalty.

_____

[1]  Unless otherwise indicated, all section references are to
                                              (continued...)

FINDINGS OF FACT

On June 1, 1969, Nathaniel Garfield and Thomas McSherry formed McSherry Associates, LP (the partnership), a New York limited partnership. The purpose of the partnership was to finance, research, and develop a variety of mechanical patents. Mr. McSherry, the general partner, had a 51-percent equity interest, and Mr. Garfield, after making an initial $25,000 contribution, was a limited partner with the remaining 49-percent equity interest. On July 10, 1969, Thomas McSherry filed an application with the U.S. Patent Office for his invention, the expansible fastener. At the time of his application, Mr. McSherry also recorded an assignment to the partnership of all patent rights relating to the expansible fastener.

On September 18, 1970, Mr. McSherry and Mr. Garfield incorporated Mechanical Plastics Corp. (MPC). Upon formation of the corporation, the partnership owned 74 shares of MPC stock, and J. Wolfe Golden, another investor, owned the remaining 26 shares. On September 22, 1970, Mr. McSherry signed an employment agreement with MPC providing him with an annual salary and royalties relating to his inventions. Also on that date, MPC's board of directors held a special meeting at which they executed

---

[1](...continued)
the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

a shareholders' agreement.  The shareholders' agreement delineated the shareholders' rights and restricted the transfer of company stock.

On October 10, 1970, the partnership and MPC executed an assignment agreement, which assigned the rights to the expansible fastener (i.e., for which a patent application was pending) from the partnership to MPC.  In consideration of the transfer of patent rights, MPC was obligated to make payments to the partnership of 4 percent of the gross proceeds from the sale of expansible fasteners.

On October 10, 1970, the partnership dissolved.  Thereafter, Mr. McSherry owned 38 percent, and Mr. Garfield owned 36 percent of MPC shares.  Pursuant to the dissolution agreement, all shares of MPC owned by the partnership were distributed to Mr. McSherry and Mr. Garfield.  The dissolution agreement further provided that Mr. McSherry and Mr. Garfield would each receive 50 percent of MPC's payments due to the partnership.  In addition, the assignment agreement provided that, upon dissolution of the partnership, payments relating to the expansible fastener were to be made directly to Mr. McSherry and Mr. Garfield.

On March 28, 1972, the U.S. Patent Office granted the patent for the expansible fastener, and, thereafter, Mr. McSherry and Mr. Garfield began to collect royalty payments from the sales of the device.  From 1978 through 1985, petitioner and Mr. McSherry

made joint assignments to MPC of the rights relating to various inventions (i.e., for which patent applications were pending).

Petitioners timely filed their joint Federal income tax returns relating to 2000, 2001, and 2002. On December 2, 2004, respondent issued petitioners a notice of deficiency in which he determined that income reported by petitioners as long-term capital gain (i.e., in the amounts of $247,977, $224,962, and $339,560 relating to 2000, 2001, and 2002, respectively) was ordinary income. Respondent further determined that petitioners were liable for a section 6662 penalty relating to 2000, 2001, and 2002.

On March 1, 2005, petitioners, while residing in Purchase, New York, filed their petition with the Court.

OPINION

Petitioners contend that, pursuant to section 1235, income reported by petitioners in the amounts of $247,977, $224,962, and $339,560 relating to 2000, 2001, and 2002, respectively, qualifies for long-term capital gain treatment. Section 1235(a) provides that a transfer of property consisting of all substantial rights to a patent is considered a sale or exchange of a capital asset held for more than 1 year (i.e., a long-term capital asset), regardless of how long the transferor actually held the rights to the patent. Long-term capital gain treatment, however, is not available pursuant to section 1235 if

such a transfer is made to a related person as defined in section 267(b). See sec. 1235(d). For purposes of section 1235, a corporation and an individual owning more than 25 percent of such corporation are related persons. Sec. 267(b)(2).

The patent rights to the expansible fastener were transferred to the partnership by Mr. McSherry on July 10, 1969, the same date that he filed an application with the U.S. Patent Office. On that date, Mr. Garfield was an equity partner in the partnership but did not hold any patent rights associated with the expansible fastener. Mr. Garfield transferred all of his patent rights to MPC after October 10, 1970. On that date, and thereafter, Mr. Garfield had a 36-percent interest in MPC. Because Mr. Garfield owned more than 25 percent of the stock of MPC, he and MPC were related persons. Secs. 267(b)(2), 1235(d)(1). Thus, pursuant to section 1235, royalty payments from MPC to Mr. Garfield do not qualify for long-term capital gain treatment. Petitioners contend that Mr. Garfield and Mr. McSherry signed a forbearance agreement in 1969 that transferred to the partnership all substantial rights to any patents; that this transfer qualifies for long-term capital gain treatment pursuant to section 1235(a); and that upon formation of MPC in 1970, the terms of the purported forbearance agreement carried over to the shareholders of MPC, thereby qualifying the reported

income for capital gain treatment pursuant to section 1235.  We reject petitioners' contentions because there is insufficient credible evidence to establish the existence of a forbearance agreement.

Petitioners further contend that if capital gain treatment is not available pursuant to section 1235, then the payments are entitled to such treatment pursuant to sections 1221 and 1222. Section 1.1221-1(c)(1), Income Tax Regs., provides that a patent may qualify as a capital asset.  In order to qualify for long-term capital gain treatment, however, a taxpayer must hold his capital asset for the requisite period prior to a sale or exchange.  Sec. 1222(3).  At no time during the existence of the partnership did Mr. Garfield hold a capital asset.  Mr. Garfield and Mr. McSherry did make joint transfers of patent rights to MPC between 1978 and 1985, but Mr. Garfield did not hold the patent rights for the requisite period to qualify for long-term capital gain treatment.  Accordingly, we sustain respondent's determination.[2]

Section 6662(a) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to a substantial

---

[2]  Pursuant to sec. 7491(a), petitioners have the burden of proof unless they introduce credible evidence relating to the issue that would shift the burden to respondent.  Rule 142(a). Our conclusions, however, are based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial.  See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16 (1998).

understatement of income tax. Sec. 6662(b)(2). An understatement is the amount by which the correct tax exceeds the tax reported on the return. Sec. 6662(d). The understatement is substantial if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6662(d)(1)(A)(i) and (ii). Petitioners erroneously reported income resulting in understatements of tax of $48,603, $40,497, and $37,442 for 2000, 2001, and 2002, respectively.

An understatement is reduced by the portion of the understatement that is attributable to the tax treatment of an item for which there is substantial authority or with respect to which there is adequate disclosure and a reasonable basis. See sec. 6662(d)(2)(B); sec. 1.6662-4(a), Income Tax Regs. Petitioners did not have substantial authority for their position, nor did they adequately disclose their position. No reduction, therefore, is appropriate.

Section 6664(c)(1) provides that no penalty shall be imposed if a taxpayer demonstrates that there was reasonable cause for the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners do not contend that they followed, or even sought,

the advice of a tax professional.  We conclude that petitioners did not act with reasonable cause when they characterized the royalty payments as long-term capital gains.  As a result, petitioners are liable for the section 6662(a) accuracy-related penalty.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered for respondent.